BROWN, Chief Judge.
| ] Defendant, Michael Ray Stewart, appeals from an adverse judgment awarding general and special damages to plaintiffs, Sherri Renee Moore and Joseph Ford. For the reasons set forth herein, we reverse in part and amend in part the judgment of the trial court, and as amended, affirm.

Facts and Procedural History

This case involves a fight between a husband (defendant) and wife (plaintiff, Moore) and her boyfriend (plaintiff, Ford). The facts were disputed at trial with both plaintiffs and defendant claiming that the other party or parties were the aggressor.
Plaintiff, Sherri Renee Moore, married defendant, Michael Ray Stewart, on December 28, 2007. This was Moore’s fourth marriage. On December 30, 2008, the couple separated. Moore began dating Joseph Ford in February 2009 but ended the relationship after only a month in an attempt to reconcile with Stewart. Following the couple’s initial separation, defendant hired a private investigator who obtained evidence of Moore’s and Ford’s relationship. Moore and Stewart began attending marriage counseling, and at a session on April 27, 2009, Moore stated that she told Stewart that she wanted to end the relationship.
After the session, Stewart went to Moore’s house in West Monroe, the former matrimonial domicile, and waited outside. The house was Moore’s separate property, but Stewart had paid the house notes during the marriage. When Moore returned home, the spouses talked. Moore testified that they discussed the ending of she and Stewart’s relationship and were clear that it was over. Defendant, however, claimed that Moore agreed to 12continue attending counseling and working on their marriage. Stewart, who was working in Shreveport, left to return to his apartment in Bossier City. Before leaving, he testified that he gave Moore $1,800 in cash for bills and groceries.
After defendant left, Moore called Ford, told him that she had ended her marriage and asked him to come over to the house. *1021 He was at a Taco Bell restaurant and brought over tacos.
Defendant testified that, while driving, he realized that he had left his work provided cell phone at Moore’s home and needed to retrieve it. Thus, he turned around and returned to Moore’s house. Defendant parked behind Ford’s car. Upon entering the house, defendant demanded that Ford “step outside,” telling him, “we have something to settle.” Ford testified that he told defendant that was not necessary. Ford then saw Stewart pull a knife with a five-inch blade from out of his pocket. Ford ran into an office to the right of the entryway and grabbed a queen size mattress, placing it in the doorway to protect himself. Defendant stabbed the mattress, which Ford then released. Ford and Moore backed into the office with defendant.
Plaintiffs testified that defendant, wielding the knife, then held them captive in the office while screaming and threatening to kill them. Plaintiffs claimed that Stewart began striking Moore in the face. Moore could not recall exactly how many times she was hit, but Ford testified that it was “eight or ten times.” At some point, defendant and Ford had an exchange about whether Ford attended church. Defendant then allowed Ford to leave.
| immediately after getting in his truck, Ford called 911. Police later arrived at Moore’s home and arrested defendant.
Defendant testified that when Ford refused to leave, defendant attempted to hit him, which caused Ford to protect himself with the mattress. Defendant denied that he pulled the knife intentionally. He claims that while kicking the mattress, the knife fell out of his pocket. Defendant contended that he used the knife in an attempt to cut through the mattress. He testified that the knife was still in the mattress when Ford released it.
With the mattress removed from the doorway, defendant alleges that Ford ran into a corner and pulled a filing cabinet in front of himself. Defendant testified that he moved to “kick the filing cabinet off of him” when “all of the sudden there was something in my face right there and I just swung.” Defendant claimed that Moore had come to aid Ford and “stuck that Taco Bell sack up in my face.” Stewart testified that he only struck Moore twice to defend himself and stopped once he realized whom he was hitting. Stewart maintains that plaintiffs were free to leave anytime during the encounter and, in fact, he was trying to get Ford to leave.
After Ford left, defendant helped Moore clean herself so they could go to a doctor. While helping her, defendant claimed that Moore was repentant and grateful to him for looking after her. Stewart contended that although he was arrested, Moore did not wish to press charges against him.[1] LHowever, both plaintiffs later obtained a protective order. Moore testified that her medical bills were paid by defendant’s insurance.
On April 25, 2010, two days before prescription would have run, Moore filed suit against Stewart. On July 2, 2010, Stewart filed his “Answer and Reconventional Demand.” Therein, he alleged that Moore was the aggressor in the incident, and that he suffered compensable pain and suffering as a result. He also made a third party demand against Ford, alleging that Ford had alienated the affections of Moore for Stewart and should “respond in monetary damages for the same.” Ford answered the third party demand on July 23, 2010, and also made a reconventional demand against Stewart, alleging that he *1022 experienced pain, suffering and mental anguish as a result of Stewart’s actions.
A bench trial was held on August 8, 2011. On August 26, 2011, the trial court issued its Reasons for Judgment and Judgment in a single document, finding in favor of plaintiffs. We note that La. C.C.P. art. 1918 provides that “a final judgment shall be identified as such by appropriate language. When written reasons for judgment are signed, they should be set out in an opinion separaté from the judgment.” La. C.C.P. art. 5051, however, provides, “[t]he articles of this Code are to be construed liberally,. and with due regard for the fact that rules of procedure implement the substantive law and are not an end in themselves.” See Hinchman v. Int’l Bhd. of Elec. Workers, Local Union # 130, 292 So.2d 717 (La.1974); see l^also, Martin v. JKD Investments, LLC, 42,196 (La.App.2d Cir.06/20/07), 961 So.2d 575.[2]
The court held defendant’s attack on plaintiffs “to be unwarranted and unprovoked.” The court awarded damages to both Ford and Moore, as follows:
... in favor of plaintiff Sherri Renee Moore, and against Michael Ray Stewart, in the following sums:
A. General damages owed Ms. Moore .$80,000.00
B. Special Damages owed Mr. Wilson(sic)[3]
Past Medical Expenses .$5,854.75
Future Medical Expenses .$10,500.00
and,
... in favor of Joseph Ford and against Michael Ray Stewart, general damages in the sum of $5,000.00
Defendant filed a motion for new trial on August 31, 2011, which was denied. Thereafter, defendant filed this timely appeal.
| ⅛Discussion

Liability

Defendant contends that the trial court erred in finding him responsible for any injuries suffered by plaintiffs. In civil cases, a trial court’s findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. Stobart v. State through Dept, of Transp. and Development, 617 So.2d 880 (La.1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, supra.
Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous. Stobart, supra; Wimberly v. Giglio, 46,000 (La.App.2d Cir.01/26/11), 57 So.3d 389. Further, when findings are *1023 based upon determinations regarding credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings. Stobart, supra; Easter v. Direct Ins. Co., 42,178 (La.App.2d Cir.05/09/07), 957 So.2d 323.
In the case sub judice, the trial court applied La. C.C. art. 2315, which provides that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
As in most romantic triangles, the antagonists give differing accounts of what occurred. On appeal, defendant offers only his trial testimony as evidence that the trial court erred in its findings. Contrary to the assertions |7of Moore, Stewart claims that the couple reconciled after the therapy session at which Moore told him she wished to end the marriage. He argues that it was Ford who refused to leave Moore’s home. His efforts with his knife were meant only to cut through a mattress so that he could make Ford leave. He further contends that Moore was the aggressor in the attack, provoking him with a sack of fast food.
Plaintiffs both testified that Stewart was attempting stab Ford’s hands. Sgt. Darrell Johns of the Ouachita Parish Sheriffs Office testified that there were cuts in the mattress Ford had been holding. Plaintiffs also testified that defendant held them captive at knifepoint, threatened to kill them, and repeatedly struck Moore in the face while inside the office. Stewart himself admitted that he struck Moore at least twice, though he claims it was reactive, while Ford testified that Moore was hit 8 or 10 times.
The trial court chose to credit the testimony of plaintiffs over that of defendant. We are therefore constrained to hold that there was a reasonable basis for the trial court’s findings and those findings were not clearly wrong.

Quantum

Defendant asserts that the trial court erred in awarding excessive damages to plaintiffs. The trier of fact has much discretion when assessing damages in cases of offenses, quasi offenses and quasi contracts. La. C.C. Art. 2324.1.

General Damages

The trial court awarded Moore $30,000 and Ford $5,000 in general damages. General damages involve mental or physical pain and suffering, | ^inconvenience, loss of intellectual or physical enjoyment, or other losses of lifestyle which cannot be measured with mathematical certainty. Duncan v. Kansas So. Ry. Co., 00-0066 (La.10/30/00), 773 So.2d 670; Pittard v. Lewis, 45,412 (La.App.2d Cir.08/11/10), 46 So.3d 202. The trier of fact is given great and even vast discretion in setting general damage awards. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Pittard, supra.
The role of an appellate court in reviewing a general damages award is not to decide what it considers to be an appropriate award but rather to review the exercise of discretion by the trier of fact. Bouquet v.. Wal-Mart Stores, Inc., 08-0309 (La.04/04/08), 979 So.2d 456. Applicable to the instant case is Reck v. Stevens, 373 So.2d 498, 505 (La.1979), where the supreme court held that:
A general review of the jurisprudence indicates that our courts balance many factors in assessing damages in assault and battery cases. These include, besides physical pain and suffering, the factors of provocation, reasonableness of force used, attendant humiliating circumstances, sex of victim, mental distress, etc. There is no rule or standard of law fixing or establishing the amount *1024 of recovery and each ease consequently must rest on its own set of facts.
If a reviewing court finds that an award constitutes an abuse of discretion, the award may then be raised or lowered only to the highest or lowest point reasonably within the discretion of the trier of fact. Davenport v. Giles, 46,606 (La.App.2d Cir.11/02/11), 80 So.3d 492.
Though her nose was not broken, Moore did suffer a deviated septum, septal hema-toma, and bruising. One of her treating physicians noted that surgery would be needed; however, a second physician did not believe ^surgery would be necessary. At the time of trial, 2 ⅜ years after the incident, Moore had not had surgery. Moore stated that she now suffers constant sinus problems, has loss of sense of smell, and is no longer able to enjoy many of her favorite outdoor pastimes. She testified that friends and acquaintances commented to her that the attack changed her facial appearance, making her seem older.
Dr. E.H. Baker, a medical psychologist and clinical neuropsychologist, diagnosed Moore as suffering from post traumatic stress disorder (“PTSD”) caused by the attack. Moore’s attorney sent her to Dr. Baker almost two years after the attack. At the time of the incident, Moore was 51 years old and had been married four times. She gave a history that she was both physically and sexually abused by her parents, that she was depressed “most of her life and suicidal for much of it.” She reported that due to attention and focus problems, she started taking Adderall approximately three years ago, which was before the incident with Stewart. Moore had five therapy sessions with Dr. Baker.
We note Moore’s testimony that defendant had not been physically abusive to her in the past. She did admit, however, that Ford’s drinking impacted their relationship, and that Ford had physically grabbed and bruised her arms once. She is now living with Ford. Although not a justification for defendant’s actions, for Moore to call her former paramour to come visit on the day she told defendant that she wanted to end their marriage could certainly be considered to be provocation.
|10As to the PTSD, Dr. Baker related it to both the attack and the abuse Moore suffered as a child. He was not told of other abusive relationships. Defendant stated that Moore told him of abuse by a former husband.[4]
Moore and Ford have lived together since the incident and have moved to another location. They both keep armed with guns constantly. Moore made numerous calls to the sheriffs office concerning defendant. Dr. Baker found that Moore was “hypervigilant.”
In Sumrall v. Sumrall, 612 So.2d 1010 (La.App. 2d Cir.1993), this court affirmed a general damage award of $30,000 to a plaintiff who suffered a deviated septum, an indentation in the cheekbone and a concussion due to a battery from her estranged husband after he found her having an affair with another man. Likewise, in Lowery v. Savana, 33,384 (La.App.2d Cir.05/10/00), 759 So.2d 1020, this court affirmed a $35,000 general damage award to a plaintiff whose ex-boyfriend cursed, beat and threatened to kill her for over an hour after telling him she wished to end the relationship and who later developed PTSD as a result.
Under the circumstances of this case, we cannot find that the trial court abused its *1025 almost unlimited discretion in awarding Moore $30,000 in general damages.
Defendant contests the $5,000 dollar award to Ford on the grounds that there was no physical contact between himself and Ford during the altercation and Ford failed to show compensable emotional injuries.
[1TIn order to recover mental distress damages where no physical injury was suffered by a victim, the plaintiff must show an especial likelihood of genuine and serious mental distress resulting from conduct directed at him or her. Moresi v. State Through Dept. Of Wildlife and Fisheries, 567 So.2d 1081, 1096 (La.1990); Jenkins v. Washington & Wells, L.L.C., 46,825 (La.App.2d Cir.01/25/12), 86 So.3d 666, writ denied, 12-0427 (La.04/09/12), 85 So.3d 705. The supreme court has held that this requirement, in the absence of contemporaneous physical injury, bodily injury or property damage, “guarantees that the claim is not spurious.” Moresi, 567 So.2d at 1095.
Defendant’s conduct was clearly directed at Ford, and, despite suffering no physical injuries, it is reasonable to believe that Ford was actually in fear for his personal safety. Defendant, by his own admission, attempted to engage Ford physically when he threw a punch at Ford after entering Moore’s home. He then pulled a knife from his pocket, causing Ford to flee for safety behind a spare mattress. Defendant further held Ford captive at knife-point and threatened to kill him. In light of these attendant circumstances, we cannot say that the trial court abused its discretion in awarding $5,000.

Special Damages

Finally, defendant contends that the trial court erred in awarding Moore a total of $15,854.75 in special damages. Special damages are those which either must be specially pled or have a ready market value, that is, the amount of the damages supposedly can be determined with relative 112certainty, such as the plaintiffs medical expenses incurred as result of the tort. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70; Moody v. Blanchard Place Apartments, 34,587 (La.App.2d Cir.06/20/01), 793 So.2d 281, writ denied, 01-2582 (La.12/14/01), 804 So.2d 647.
The trial court awarded Moore $5,354.75 for past medical expenses. At trial, defense counsel objected to the introduction of exhibits detailing Moore’s past medical expenses explaining that:
rat’s my understanding that my client had her covered by medical insurance, so there were medical expenses, but there should not have been any that were not covered by insurance, so that would be our objection.
The trial court initially agreed that “someone can’t double dip” on damages. Plaintiffs’ counsel argued that the collateral source rule should apply in this case, meaning insurance coverage should not lighten the liability of defendant. Rather than sustaining or overruling the objection, the trial court allowed the introduction of the medical bills but opined that it would “make a ruling on it at a later time.” The trial court made no further specific ruling on this point before awarding Moore the full amount of damages she itemized in its judgment.
The collateral source rule is a rule of evidence and damages that provides that a tortfeasor may not benefit, and an injured plaintiffs tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor’s procuration or contribution. Bozeman v. State, 03-1016 (La.07/02/04), 879 So.2d 692. Thus, under the collateral source rule, payments received from an independent source are not *1026 deducted from the award the aggrieved party would otherwise receive lsfrom the wrongdoer. Id. However, a payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability. Id.
Here, defense counsel claimed that all of Moore’s medical bills had been covered by defendant’s insurance. Moore was questioned about her past medical expenses during cross-examination:
Q. On the medical expenses you were covered by medical insurance by the employer of Mike. Were you not?
A. Yes, sir. I was.
Q. Do you have any record of any medical expenses that were not paid by insurance?
A. Yes, sir.
Q. Can you tell me how many dollars worth of medical insurance — medical bills were not paid by the insurance company?
A. Well, my deducible and co-insurances.
Q. I understand that.
A. I wouldn’t know the true dollar amount.
Neither Moore or Stewart introduced any other evidence regarding what the insurance covered and what Moore had to pay out of pocket. However, the burden of proof was on plaintiffs. The evidence showed only that Moore’s medical costs were covered by insurance for which defendant obtained and funded. Therefore, the award of past medical expenses is reversed.
Future medical expenses are likewise a legitimate item of damages. Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La.1984); Sumrall, supra. Future medical expenses, like any other damages, must be established with some degree of certainty and such an award cannot be [ 14predicated on mere speculation. Brandao v. Wal-Mart Stores, Inc., 35,368 (La.App.2d Cir.12/19/01), 803 So.2d 1039, 1047, writ denied, 02-0493 (La.04/26/02). Awards for future medical expenses that may or may not be incurred require medical testimony that they are indicated and setting out their probable cost. Menard v. Lafayette Ins. Co., 09-1869 (La.03/16/10), 31 So.3d 996. The plaintiff must show that more probably than not, these expenses will be incurred. Id.
Defendant disputes that Moore is entitled an award for any future medical expenses. Moore submitted exhibits to the trial court outlining future treatments made necessary by defendant’s attack. Plaintiffs listed that Moore required new dentures and needed to undergo several procedures to repair her deviated septum.
Defendant contends that his two punches did not cause damage to Moore’s dentures. He argued that Moore had broken them before his attack. The trial court chose, however, not to credit his testimony. Accepting the trial court’s finding of fact, we affirm the award of $1,550 future damages for dentures.
Defendant also testified, contrary to plaintiffs assertions, that Moore had suffered sinus problems prior to his battery. Defendant again notes that Moore did not suffer a broken nose. However, Moore suffered clear injuries. Dr. Sally Sartor, who twice drained Moore’s septal hematoma, noted that Moore’s injuries represented “a significant trauma to the nose,” but did not believe she needed surgery. Dr. René Dugas, however, recommended that plaintiff undergo a septo-plasty, frontal sinus exploration, | ^and partial turbinate excision. Although these procedures were covered by defendant’s insurance, Moore has not chosen to have the surgeries. We therefore reverse the *1027 award for future surgery in connection with the injury to the nose.
The remaining $8,000 dollars of the award can be reasonably attributed to testimony from Dr. Baker in which he opined that Moore was still suffering from PTSD when she stopped seeing him. He further testified that Moore’s condition was not likely to permanently improve without continued therapy. In an exchange with Moore’s counsel during trial, Dr. Baker agreed that between 15 and 20 additional sessions could be required. He then set out the cost of his treatment to be $150 per session, 20 sessions at $150 each would equal a total of $3,000. Moore did not list the cost of continued therapy in her exhibits and has not sought further therapy. Additionally, this treatment can be attributed to a lifetime of depression with suicidal ideation. Therefore, given the evidence contained in the record it was error to award this cost for future therapy.

Conclusion

For the reasons set forth above, the judgment of the trial court is amended to replace Mr. Wilson with the proper judgment creditor, Sherri Renee Moore. The trial court’s awards of special damages for past and future medical expenses to plaintiff, Sherri Renee Moore, are reversed, excepting the award for future damages to Sherri Renee Moore for dentures in the amount of $1,550. The general damages awards are affirmed. The judgment, in all other respects, is affirmed. Costs of appeal are assessed one half to appellees and one half to appellant.
J^REVERSED IN PART, AMENDED IN PART, AND AS AMENDED, AFFIRMED.

. Criminal charges were filed against Stewart and were still pending at the time of trial.

. To avoid confusion, the court should closely follow C.C.P. art. 1918.

. Defendant also argues that the trial court substantively erred when it recorded a total of $15,854.75 as "Special Damages owed Mr. Wilson” in the judgment. Defendant notes that there is no person connected with the suit by that surname. Plaintiffs argue that this was a minor typographical error and the award was clearly intended for Moore.
In Tunstall v. Stierwald, rather than affirm the original judgment and allow "a judgment to stand in favor of a non-party,” the Supreme Court amended the original judgment, pursuant to La. C.C.P. art. 2164, deleting the nonexistent company in favor of the proper party. 01-1765 (La.02/26/02), 809 So.2d 916, 921.
An appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. It is clear from the record that the special damages awarded by the trial court were meant for Ms. Moore and not Mr. Wilson.

. The trial court sustained an objection to questions by Stewart's attorney to Moore concerning abuse by other husbands.