ROBERT A. CHAISSON, Judge.
^Roderick Christopher Patrick appeals a judgment dismissing his suit against Dale Bruce for an incident in which Mr. Bruce, an off-duty Jefferson Parish deputy working a detail as a security guard at a Lowe’s building supply store, threatened Mr. Patrick with a taser device. For the following reasons, we reverse that judgment, award Mr. Patrick $500.00 in damages, and cast each party responsible for his own costs.
FACTS AND PROCEDURAL HISTORY
Mr. Patrick was attempting to purchase approximately $1,000 worth of merchandise from a Lowe’s building supply store one evening just as the store was closing at 9:00 p.m. He attempted to make his purchase with a check; however, the check clearing service used by Lowe’s rejected it, apparently because of improper identification. Mr. Patrick then called the check clearing service and was told that the matter would be cleared up and the check should be re-entered. He gave this information to the clerk and while she re-processed the check, he went |3out to the parking lot and moved his truck closer to the door for loading. When he re-entered the store, the cashier told him that the check had been rejected again.
Mr. Patrick called the check clearing service again. While he was making this call, the cashier apparently notified her supervisor of the problem. The supervisor, who was busy closing-out registers at the other end of the store, asked Mr. Bruce, the security officer who was standing nearby, to investigate the problem. The surveillance tape from the store’s interior video camera shows Mr. Bruce walk into the area near the check-out counter at 9:15 p.m. and lean against the adjoining counter without speaking to Mr. Patrick. *221 Mr. Patrick testified that during the next five minutes or so, Mr. Bruce commented that the check was not good.
At some point, Mr. Patrick asked for Mr. Bruce’s name and badge number, and Mr. Bruce complied by allowing Mr. Patrick to view his badge. Mr. Patrick testified that he was on hold with the check clearing service during this time. After the check was rejected for a third time, Mr. Bruce told Mr. Patrick that it was time to go. Mr. Patrick testified that he immediately gathered up his papers and checkbook and began walking out of the store.
The next pertinent time period begins, according to the surveillance tape from the store’s exterior camera, at about 9:21 p.m. The tape shows Mr. Patrick and Mr. Bruce emerging from the wide garage-type door, walking side by side. Mr. Patrick’s truck is to his right, and Mr. Bruce’s police unit is to his left and a little further away from the two men than the truck. The tape shows Mr. Bruce walking toward his police unit and Mr. Patrick walking toward his truck; however, just as Mr. Bruce reached the trunk area of his car, Mr. Patrick stopped and turned toward Mr. Bruce. At that point, Mr. Bruce also turned and approached Mr. Patrick while pointing at the truck. The tape then shows Mr. Patrick again |4walking toward his truck with Mr. Bruce close behind. Although there is no audio on the tape, both Mr. Patrick and Mr. Bruce testified that as they approached the truck, Mr. Bruce pulled out his taser, pointed it at Mr. Patrick, and threatened to hospitalize and arrest him if he did not leave. The video shows that before Mr. Patrick actually got into his truck, Mr. Bruce turned away and began walking back into the store. The time counter on the tape shows that about 25 seconds elapsed from the time Mr. Bruce turned toward Mr. Patrick until the time that he turned away from Mr. Patrick at the driver’s side of the truck to re-enter the store. The taser was not fired, and Jefferson Parish Sheriffs internal affairs division mechanically verified that the ta-ser had never been turned on.
Mr. Patrick immediately filed a complaint with the Jefferson Parish Sheriffs Department. After an internal affairs review, it was found that Mr. Bruce had violated sheriffs department procedures in taking out the taser and threatening Mr. Patrick with it. Specifically, it was found that Mr. Bruce had used more force than necessary under the circumstances, and that this lapse amounted to unsatisfactory performance of his duties as a deputy.
Mr. Patrick sued both Lowe’s and Mr. Bruce, but settled with Lowe’s for an undisclosed amount prior to trial. After a bench trial, which consisted of almost 400 pages of trial testimony, the videotapes of the incident, the entire internal affairs investigation and report, Mr. Bruce’s deposition, matters relating to his marital status and medical records, and three depositions of employees of Lowe’s that were on duty the night of the incident, the judge issued the following judgment:
After full consideration of the law, testimony, and submitted exhibits, the Court has determined that the defendant, Dale Bruce, did pull out a taser and point it at Mr. Roderick Patrick. However, the plaintiff has failed to provide this Court with any evidence of damages sustained as a result of the altercation. Mr. Patrick did not produce any evidence | ¿supporting the finding of a physical, mental, or emotional injury. Mr. Patrick did not produce any medical records or evidence of medical expenses for treatment or care rendered in response to any physical or psychiatric injury as a result of the incident with Dale Bruce. Plaintiff did not produce evidence of any *222 suffering as a result of mental anguish, intentional inflection of emotional distress, or any finding of post-traumatic stress disorder.
It is ordered, adjudged, and decreed that there be judgment rendered in the defendant’s favor dismissing the Petition for Damages filed by plaintiff against Dale Bruce, with prejudice, at plaintiffs cost.
Mr. Patrick now appeals this judgment, asserting that the trial judge erred in failing to award him damages and casting him for costs.
LAW AND DISCUSSION
We note initially that the standard of review of general damage awards is whether the trier of fact abused its much discretion in fixing such awards. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); see also Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70. It is also the rule that an appellate court may disturb an award, or lack of an award, only after a finding, based on the entire record and considering the particular injuries and their effect on the particular victim, that the factfinder abused this discretion. Youn, supra. Moreover, it is only after a determination of abuse of discretion has been made by the appellate court that such a court may look to other similar cases for guidance as to an appropriate award, with the understanding that the award may then be adjusted only insofar as lowering it to the highest point, or raising it to the lowest point, which would be reasonable on the record. Id.
In delictual actions the plaintiff bears the burden of proving fault, causation and damages. Wainwright, supra. In Lugenbuhl v. Dowling, 96-1575 (La.10/10/97), 701So.2d 447, the court discussed the concept of “dignitary torts.” It cited with approval Dan B. Dobbs, Law of Remedies, (1993), in which that author used that term to describe situations in which the law seeks to protect intangible | (Interests in personal integrity and privacy, as well as mental tranquility. The court observed that in the appropriate type of case, “damages for deprivation of self-determination, insult to personal integrity, invasion of privacy, anxiety, worry and mental distress are actual and compensatory.” Lugenbuhl, at 455.
In the present case, the trial judge found as a matter of fact that Mr. Bruce pointed the taser at Mr. Patrick. Mr. Bruce admitted that he also ordered Mr. Patrick off the premises and threatened to “send him to the hospital” or arrest him if he did not comply. However, she ruled in Mr. Bruce’s favor on the grounds that Mr. Patrick had failed to prove any damages. We find that, under the rule of Lugenbuhl, this was an abuse of discretion.
Having determined that the factfin-der abused her discretion in not awarding any damages, we are now permitted to look to other similar cases for guidance as to an appropriate award. While there are very few cases involving a similar situation, we find the case of Wattik v. Lewis Grocer Co., 476 So.2d 444 (La.App. 4th Cir.1985) instructive. There, plaintiffs were awarded $600 and $900, respectively, for an aggravated assault in which the defendant thrust a machete into the windows of a car in which plaintiffs were sitting during an argument. Although the court found the damages “slightly low,” it noted that the plaintiffs could have driven off at any time, but chose to stay to call the defendant’s “bluff.”
In the present case, we note in this regard that Mr. Patrick admitted that he had been asked to leave the store, and he in fact was doing so by exiting the building and walking toward his truck. However, *223 the video shows that he inexplicably stopped walking toward his vehicle, turned back toward Mr. Bruce, and took one or two steps back toward him. It is only at that point that Mr. Bruce, apparently thinking that Mr. Patrick was defying him, approached Mr. Patrick and threatened him that if he did not leave immediately, he would be shot with the taser |7and taken to the hospital, or arrested and taken “downtown.” Mr. Bruce never fired the taser and did not touch Mr. Patrick in any way. Before Mr. Patrick actually got into his truck, Mr. Bruce turned away from him and walked back into the store, apparently satisfied that Mr. Patrick was indeed leaving. According to the surveillance tapes, the entire confrontation in the parking lot lasted no longer than 25 seconds.
We also note that Sgt. Michael Brocato, the officer who conducted the internal affairs review, testified at length about the incident as shown on the videotapes. He said that the finding that Mr. Bruce had used excessive force was based on the general rule that an officer should only take out a weapon either to effect an arrest or to protect himself. Because neither factor was present here, it was inappropriate for Mr. Bruce to have taken out the taser. However, he also testified that during the five minutes or so that elapsed from the time Mr. Bruce arrived at the scene, and the time he and Mr. Patrick walked out of the store, Mr. Patrick is seen on the tape approaching Mr. Bruce some five times in a manner that “encroached” on his space. He saw no behavior on Mr. Bruce’s part which would have caused Mr. Patrick to ask for his name and badge number. He said that had he been in Mr. Bruce’s position, he probably would have told Mr. Patrick to leave immediately and would have arrested him if he had not done so. He explained that in his experience, it was better to nip an incident in the bud, rather than let it escalate into a more serious confrontation. He stated that “I had mentioned the scenario that, if that was me, I would have tapped you on the shoulder and advised you that the store was closed. I would have effected the arrest by approaching you and ending it right there.”
| «Considering all of the above factors, we deem an award of $500 to be the lowest award that the trier of fact could have made on the record before us, and we fix the award at that amount.
In regard to costs, there was also evidence that Mr. Patrick had summarily dismissed any discussions about settling the matter. In a letter to defense counsel Mr. Patrick wrote that “I can promise you that I will never rest until the true and complete facts of the Dale Bruce matter are fully exposed and the proper judgments have been rendered against Mr. Bruce.” Mr. Patrick suggested to the district court, and has repeated here, that appropriate damages in this case would be $100,000. Although the general rule is that the party cast in judgment is responsible for payment of costs, we find that in light of the circumstances surrounding this incident, the trial of the matter and the ultimate result obtained, a more equitable assessment of costs is that each party bears his own costs. La. C.C.P. art. 2164.
DECREE
For the foregoing reasons, the judgment is reversed to provide that Mr. Patrick is entitled to general damages in the amount of $500. The judgment is further amended to provide that each party shall bear his own costs in the district and appellate courts.

REVERSED.