CHUTZ, J.
Defendants-appellants, Stephen Lewis[1] and the City of New Roads (the City), appeal the trial court's judgment, awarding damages to twenty-two minor plaintiffs-appellees for the injuries sustained at Rosenwald Elementary School in Point Coupee Parish.[2] Finding the claims of seven of the minor plaintiffs prescribed before they were filed, we reverse in part. Additionally, we amend the judgment to award to the minors' representatives the damages sustained by nine minors and, as amended, affirm the trial court's judgment against Lewis and the City.
FACTUAL AND PROCEDURAL BACKGROUND
Lewis was a police officer employed by the City and used by the Point Coupee Parish School Board (PCPSB) at Rosenwald Elementary School as a resource officer on March 6, 2012, pursuant to a contract between PCPSB and the City. According to the testimony adduced at trial and the defendants' stipulation, an incident occurred on campus on March 6, 2012, where at least twenty-two elementary school children were identified as bullies by Lewis, the teacher in the classroom, and/or fellow classmates. Lewis removed the identified children into the hallway and directed them to wait in a line until all the children were gathered. He then ordered them outside and directed the children identified as bullies to kneel in gravel for between ten and forty minutes, with the majority of the students recalling they knelt for between ten and twenty minutes. Some children stated that Lewis yelled at them; others said that when they refused to kneel or squirmed due to the pain, he threatened to keep them kneeling for a longer period of time. All of the children involved in the incident who testified recalled that Lewis was dressed as a police officer and most recalled that he had his gun and *1068 handcuffs. Several of those who had been minors involved in the incident stated that during the incident, Lewis made physical contact with them, indicating that as he or she attempted to rise from the kneeling position, Lewis pushed him/her back to the ground, touching his or her shoulders in the process. Some of the children stated that Lewis ordered them to put mud on their faces or to go into a muddy ditch, but ultimately stated he did not follow through on the threats. Eventually, Lewis allowed the children to stand up, and they left as a group.
On March 6, 2013, the mothers of fifteen of the children instituted this lawsuit, naming PCPSB, its insurer, and Lewis as defendants. By amended petition, filed on August 14, 2013, the City was added as a named defendant. The City and Lewis answered the petition and the amending petition. A second amending petition was filed by plaintiffs to set forth the capacity of each plaintiff representing the minor children who were seeking redress. On September 8, 2016, plaintiffs again amended their petition to add additional plaintiffs. The City and Lewis filed a peremptory exception raising the objection of prescription as to the additional plaintiffs named in the third amending petition on December 15, 2017. At a hearing on January 9, 2018, the trial court denied the exception of prescription and subsequently signed a judgment in conformity with its ruling.
The matter proceeded to a trial on the merits commencing on January 16, 2018. On March 5, 2018, the trial court signed a judgment, awarding $5,000 for the damages sustained on March 6, 2012 by each of those who had been identified as a bully and subjected to Lewis's actions. The City and Lewis appeal.
PRESCRIPTION
On appeal, the City and Lewis maintain that the trial court erred in denying their exception of prescription.[3] They urge that when the additional plaintiffs were added four-and-a-half years after the incident occurred, their claims were already prescribed. Thus, they contend, the awards in favor of these added parties are untimely. We agree.
Ordinarily, the party pleading prescription bears the burden of proving the claim has prescribed. However, when the face of the petition reveals that the plaintiff's claim has prescribed, the burden shifts to the plaintiff to demonstrate prescription was interrupted or suspended. Kirby v. Field , 2004-1898 (La. App. 1st Cir. 9/23/05), 923 So.2d 131, 135, writ denied, 2005-2467 (La. 3/24/06), 925 So.2d 1230. Because the additional plaintiffs' claims were prescribed on the face of the petition, they bore the burden of proving their claims were not prescribed.
La. C.C.P. art. 1153 sets out the requirements for giving retrospective effect to an amended petition:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
This article does not refer to parties but to claims or actions. La. C.C. article 2324 provides that interruption of *1069 prescription against one joint tortfeasor is effective against all joint tortfeasors. Thus, the addition of additional defendants in a suit will relate back to the date of the original suit if the defendants are joint tortfeasors. However, there is no legislative pronouncement involving the addition of plaintiffs with the idea of "relating back." This concept is a jurisprudential creation. In Giroir v. So. Louisiana Med. Ctr., 475 So.2d 1040, 1044 (La. 1985), the supreme court established four criteria that must be satisfied in order to allow for the addition of plaintiffs to an original timely filed petition:
[A]n amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the defendant either knew or should have known of the existence and involvement of the new plaintiff; (3) the new and the old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.
Boquet ex rel. Billiot v. SWDI, LLC, 2007-0738 (La. App. 1st Cir. 6/6/08), 992 So.2d 1059, 1063-64, writ denied sub nom., Boquet v. SWDI LLC, 2008-2086 (La. 9/4/09), 17 So.3d 958.
The jurisprudence is unequivocal that all four elements set forth in Giroir are required for the amendment adding additional parties to relate back to the original petition. See Delmore v. Hebert, 99-2061 (La. App. 1st Cir. 9/22/00), 768 So.2d 251, 253. We conclude that plaintiffs failed to establish the third jurisprudential element required by Giroir, i.e., that the new and the old plaintiffs are sufficiently related such that the added or substituted party is not wholly new or unrelated.
The circumstances under which the court has allowed amended petitions naming new plaintiffs to relate back are usually those where the new and added plaintiffs are close family members who have a special legal relationship. The Giroir court clearly limited the added family-member plaintiff to the relationships of immediate family of husband-wife and parents-children, and to the legal relationships arising from such familial relationship. A close scrutiny by the Giroir court revealed that the third element was deemed satisfied when the amendment involved a cause of action arising from, or dependent upon, a common tort victim, common to the original and added plaintiff. In other words, the successfully added plaintiffs had divergent claims stemming from a common root, namely the same tort victim. Delmore , 768 So.2d at 255.
Here, there is no common tort victim upon which both the original and added plaintiffs base their claims. The additional plaintiffs' claims are not derivative of those asserted by the original plaintiffs and there is no legal relationship relating the additional plaintiffs' claims to those of the original plaintiffs. As fellow students identified as bullies, the claims of the additional plaintiffs are unrelated from a legal standpoint. Thus, there is no basis under which the amended petition adding these plaintiffs can relate back to the original petition. Therefore, the trial court erred in denying the exception of prescription as to the additional plaintiffs.[4] See *1070 Eaglin v. Eunice Police Dep't, 2017-1875 (La. 6/27/18), --- So.3d ----, ----, 2018 WL 3154744, *4-5.
LACK OF PROCEDURAL CAPACITY TO SUE
The record establishes that Alton Albert is a minor whose parents are deceased. The City and Lewis filed a dilatory exception raising the objection of lack of procedural capacity along with their answer to the plaintiffs' original and first amending petition, averring that Rhonda Pichon was not a proper representative to sue on Albert's behalf. On January 7, 2014, the trial court sustained the dilatory exception and ordered an amendment of the petition. Plaintiffs filed a second amending petition on January 23, 2014, naming Pichon on behalf of Albert "in her capacity as the natural tutrix and administrator of the estate of her ... minor [child]." The City and Lewis did not answer Pichon's third amending petition, and no further action is demonstrated in the record until the trial on the merits. On appeal, the City and Lewis challenge the trial court's refusal to dismiss Rhonda Pichon's representation of Albert, who is her nephew.
According to La. District Court Rules, Rule 9.14(a), the method of setting a date for trial shall be determined by each district court as set forth in Appendix 9.14. Appendix 9.14 for the Eighteenth District Court requires that prior to a trial on the merits, a suit must be pre-tried. Additionally, "Any party desiring to assign a case for trial shall ... after disposition of all contemplated or pending ... exceptions ... file a written motion accompanied with an order for a pre-trial conference."[5]
Here, it is undisputed that as of November 11, 2014, the City had actual knowledge that, in support of her representation of Albert, Pichon relied on a form, entitled "PROVISIONAL CUSTODY BY MANDATE," executed by a notary and "Gaynell Theresa Boyd" on October 4, 2013, in her capacity as a co-tutor of Albert. Yet, despite the City's actual knowledge of any deficiencies in the evidence Pichon relied upon to represent her nephew as well as its obligation under Rule 9.14 to dispose of all pending exceptions prior to the trial on the merits, the City chose to wait until the third day of trial, after the plaintiffs had rested to challenge Pichon's representation of Albert. Under these circumstances, we find that the City waived its right to object on the basis of the alleged lack of procedural capacity of Pichon to represent Albert. See La. C.C.P. art. 926B ("All objections which may be raised through the dilatory exception are waived unless pleaded therein."); La. C.C.P. art. 929A ("[T]he dilatory exception ... when pleaded before or in the answer shall be tried and decided in advance of the trial of the case."). Accordingly, we find the trial court correctly declined to dismiss Pichon's representation of Albert.
DAMAGES
On appeal, without challenging the quantum of each award, the City and Lewis assert that because the record is devoid of any medical evidence supporting physical, emotional, and psychological injuries, the trial court erred in awarding any damages to the minors. Thus, they ask that this court reverse the awards of $5,000 as damages sustained by each minor.
In delictual actions the plaintiff bears the burden of proving fault, causation and damages.
*1071 Wainwright v. Fonte not, 2000-0492 (La. 10/17/00), 774 So.2d 70, 74. In Lugenbuhl v. Dowling, 96-1575 (La. 10/10/97), 701 So.2d 447, 455, the Louisiana Supreme Court discussed the concept of "dignitary torts." The Lugenbuhl court cited with approval 2 Dan B. Dobbs, Law of Remedies, §§ 7.1-7.3 (1993), in which the author used the term dignitary torts to describe situations in which the law seeks to protect intangible interests in personal integrity and privacy, as well as mental tranquility. The court observed that in the appropriate type of case, "damages for deprivation of self-determination, insult to personal integrity, invasion of privacy, anxiety, worry and mental distress are actual and compensatory." See Lugenbuhl, 701 So.2d at 455 ; see also Patrick v. Lowe's Home Centers Inc., 2013-294 (La. App. 5th Cir. 12/12/13), 131 So.3d 219, 222 (finding the trial court abused its discretion in declining to award any damages in a store customer's delictual action against the store's security guard arising out of incident in which the guard threatened to fire a taser at the customer, where the guard pointed the taser at the customer, and the guard admitted that he ordered the customer off the premises and threatened to "send him to the hospital" or arrest him if he did not comply).
The testimonial evidence admitted at trial established that Lewis's conduct was clearly directed at the children who were singled out of their classrooms for special treatment as a result of having been identified either by Lewis, a teacher, or other students as a bully. Lewis not only threatened them, he also used his supervisory power to order the children to kneel in gravel. Several minors (and those who had been minors on March 6, 2012) as well as their parents testified that the child experienced fear for his or her personal well-being or felt "bad" or otherwise burdened for having been singled out as a bully. Indeed, many of those who testified indicated that they were afraid Lewis would hurt them with his gun or cause them some other type of physical harm. The testimony established that most of the children developed distrust in law enforcement after the incident. A reasonable factual basis exists to support the trial court's implicit finding that Lewis's actions were an affront to the personal integrity and privacy, as well as mental tranquility, of each child and sufficiently caused their damages. Therefore, the trial court's awards are not manifestly erroneous.[6]
THE CITY'S LIABILITY FOR LEWIS'S ACTIONS
The City and Lewis contend that the trial court erred in finding the City liable to the minors for Lewis's conduct. They urge that under the facts of this case, PCPSB was solely responsible for Lewis's actions on March 6, 2012, and as such, the City owed no duty to the children. As such, the City suggests that it cannot be liable to plaintiffs. We disagree.
In Louisiana, employers are vicariously liable for the torts of their employees under La. C.C. art. 2320, which provides:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
*1072 Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
The master is answerable for the offenses and quasi-offenses committed by his servants, according to the rules which are explained under the title: Of quasi-contracts, and of offenses and quasi-offenses.
Although Article 2320 provides that employers are only liable when they might have prevented the act that caused the damage, the courts of this state have consistently held that employers are vicariously liable for any torts occasioned by their employees. Ermert v. Hartford Ins. Co., 559 So.2d 467, 476 (La. 1990).
The evidence in this case established that on March 6, 2012, the City had a contractual relationship with PCPSB whereby the City sent police officers over to PCPSB schools to function as resource officers. And in its answer to the lawsuit, the City admitted that Lewis did not "maintain an employment relationship with [PCPSB]" at the time of the incident. Thus, as the Rosenwald Elementary School Resource Officer, Lewis was PCPSB's "borrowed employee" from the City, the City was Lewis's "general employer," and PCPSB was Lewis's "special employer." Both the general employer and the special employer may be solidarily liable for the torts of the borrowed employee. See LeJeune v. Allstate Ins. Co., 365 So.2d 471, 480-82 (La. 1978).
The general employer has a heavy burden of overcoming the presumption that it retained control (and thus remained liable for his employee's tort) and of proving that "the relationship of master and servant which previously existed between the general employer and employee has been suspended, that a new such relationship has been created between the borrowing employer and that employee, and that such new relationship was in existence at the time the accident occurred." LeJeune , 365 So.2d at 480 (quoting Vincent v. Ryder Enterprises, Inc. , 352 So.2d 1061, 1067 (1977) ). That an employee may have been a borrowed employee of the special employer for some purposes, such as working under the direction of the special employer at the time of the incident, does not relieve the general employer of its liability for its employee's negligent acts done in the pursuance of duties designated for the employee by his general employer, with whom the employee continued in a paying working relationship and who had the sole right to discharge him. This is especially so where the employee was loaned out to another in a continuing arrangement between the employers for their mutual benefit. See LeJeune, 365 So.2d at 481.
In the imposition of vicarious liability for the general employer whose employee was working under the direction of the special employer at the time of the incident, specific conduct may be considered within the scope of employment even though it is done in part to serve the purposes of the special employer. The fact that the predominant motive of the employee is to benefit the special employer does not prevent the act from being within the scope of employment. See Ermert, 559 So.2d at 476-77. If the purpose of serving the general employer's business actuates the employee to any appreciable extent, the general employer is subject to liability if the act is otherwise within the service. Id., 559 So.2d at 477.
The two-master rule is the more sensible rule in cases where the general employer *1073 is at least sometimes engaged in the business of lending out people and equipment. In such situations, the general employer's business is being furthered even if it does not control the details of the actual work. Moreover, the special employer benefits: it is its work that is being done as well. In such situations, the relevant enterprise benefitted by the work consists of the combination of the general and special employers. The two-master rule represents a triumph of function over (legal) fiction. See Thomas C. Galligan, Jr., A Primer on the Patterns of Louisiana Workplace Torts, 55 Louisiana Law Review 91 (1994). See also Morgan v. ABC Mfr., 97-0956 (La. 5/1/98), 710 So.2d 1077, 1083 (holding that where a general employer is in the business of hiring its employees out under the supervision of others, the general employer remains liable for the "borrowed" employees' torts under La. C.C. art. 2320 ).
Whether an employee was in the course and scope of his employment at the time of the incident is a factual determination. See Ermert, 559 So.2d at 479. A reviewing court cannot disturb the factual findings of a trial court absent manifest error. To reverse the trial court's factual findings, the appellate court must find from the record that no reasonable factual basis exists for the findings and must determine that the record establishes the findings are clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La. 1993). Thus, the inquiry is whether the factual findings are reasonable, not whether the trier of fact was right or wrong. Id. If, in light of the record in its entirety, the trial court's findings are reasonable, then the appellate court may not reverse, even if convinced it would have weighed the evidence differently sitting as the trier of fact. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La. 1990).
With these precepts in mind, we find no manifest error in the trial court's conclusion that Lewis was in the course and scope of his employment at the time of the March 6, 2012 incident. Thus, the trial court correctly concluded that the City was vicariously liable under Article 2320 to the plaintiffs for Lewis's actions on March 6, 2012. See Ermert, 559 So.2d at 476-77. The evidence established that while acting in his capacity as a resource officer and, more particularly on March 6, 2012, when he removed the minor children from their classrooms and forced them to kneel on gravel in an effort to punish those identified as bullies in the elementary school, Lewis was dressed as police officer of the City. He carried a gun and handcuffs, and a police vehicle, identified as a marked unit of the City, was parked in front of the school while he was on duty as a resource officer. Although the City of New Roads Mayor Anthony R. Daisy testified that while he was administering his duties as a resource officer, Lewis was under the supervision and direction of the Rosenwald Elementary School principal and assistant principal and that the PCPSB paid his salary during those times, the mayor admitted that when police officers are off duty, they are not permitted to either wear a City police uniform or carry their guns or handcuffs. Mayor Daisy also conceded that the City hired Lewis, trained him, and retained the right to fire the police officer. We find the trial court could reasonably infer from the testimonial evidence that the resource officer was at the elementary school at the request of the PCPSB to maintain safety and order on campus, functions that are regular duties of police departments. Accordingly, there is no error in the trial court's conclusion that the City was liable to the plaintiffs for the damages caused by Lewis on March 6, 2012.
*1074 CONCLUSION
Although the parties have not pointed out that the judgment was rendered in the names of each minor, rather than in the names of the party representing them,[7] under our authority to correct clerical errors, we amend the judgment to conform to the pleadings. See Jackson v. East Baton Rouge Parish , 331 So.2d 64, 65 (La. App. 1st Cir. 1976) ; Saad v. Anderson , 416 So.2d 188, 192 (La. App. 1st Cir., 1982) ; La. C.C.P. art. 2164 ("The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.").
For these reasons, finding their claims were prescribed at the time they filed their lawsuit, we reverse those portions of the judgment that awarded damages of $5,000 each to plaintiffs-appellants, Devontae Cannon, Daquan Haney, Jeriontai Webb, Kamerson Webb, Toney Washington, Deandre Bergeron and McKenzie Jones. Insofar as the remaining claims, we amend the judgment to award damages of $5,000 each to plaintiffs-appellees Crystal Carter as the natural tutrix and administrator of the estate of Camasia Mims; Tanya Clark as the natural tutrix and administrator of the estate of Prede Albert; Stephanie Derosin as the natural tutrix and administrator of the estate of Travianna Derosin;[8] Shemika McCoy as the natural tutrix and administrator of the estate of Micah Smothers; Rhonda Pichon as the natural tutrix and administrator of the estate of Danny Albert, III; Rhonda Pichon as the proper party representative and administrator of the estate of Alton Albert; Courtney Toussaint as the natural tutrix and administrator of the estates of Joshua Cambell and Elyssia George; Melva Victorian as the natural tutrix and administrator of the estate of Darren Butler; Jonette Pearson as the natural tutrix and administrator of the estate of Jabrielle Pearson; Marquetia Smith as the natural tutrix and administrator of the estate of Simira Howard; and Ashley Stevenson as the natural tutrix and administrator of the estate of Trevonte Stevenson. Because the plaintiffs-appellees, Treyvis Celestine, Travis Franklin, and Jailyn Smith were duly substituted after having reached the age of majority, the awards of $5,000 to each is affirmed. As amended, the judgment is otherwise affirmed. Appeal costs in the amount of $9,184.00 are assessed one-half to plaintiffs-appellees and one-half to defendants-appellants, Stephen Lewis and the City of New Roads.
REVERSED IN PART; AMENDED AND, AS AMENDED, AFFIRMED IN PART.

Although this defendant's surname is identified as "Louis" in portions of the record, we reference "Lewis," which is the surname used in his answer to the lawsuit.

The trial court's judgment awards damages to Camasia Mims, Prede Albert, Treyvis Celestine, Travianna Derois, Travis Franklin, Micah Smothers, Danny Albert, III, Alton Albert, Joshua Cambell, Elyssia George, Darren Butler, Jabrielle Pearson, Jailyn Smith, Simira Howard, Trevonte Stevenson, Devontae Cannon, Daquan Haney, Jeriontai Webb, Kamerson Webb, Toney Washington, Deandre Bergeron, and McKenzie Jones.

The denial of an exception of prescription is interlocutory in nature and generally not appealable; however, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment appealed from. See La. C.C.P. arts. 1841 and 2083 ; Guidry v. USAgencies Cas. Ins. Co., Inc., 2016-0562 (La. App. 1st Cir. 2/16/17), 213 So.3d 406, 420, writ denied, 2017-0601 (La. 5/26/17), 221 So.3d 81.

The third amending petition, filed on September 8, 2016, averred the following plaintiffs in their respective capacities as the natural tutrix and administrator of the estates of her child or children were entitled to relief from the City and Lewis: Latoya Haney on behalf of Devontae Cannon and Daquan Haney; Lakeshia Webb on behalf of Jeriontai Webb and Kameron Webb; Natasha Washington on behalf of Toney Washington; Ethel Bergeron on behalf of Deandre Bergeron; and Brenda Campbell on behalf of McKenzie Jones.

The record shows that pre-trial deadlines were established by the trial court on June 13, 2017. On motion of the City and Lewis, the deadlines were extended on September 25, 2017. The pre-trial deadlines did not specifically include cut-off dates for the disposition of all exceptions.

See also Moore v. Stewart, 47,206 (La. App. 2d Cir. 6/27/12), 94 So.3d 1018, 1025, writ not considered, 2012-1753 (La. 11/2/12), 99 So.3d 660 (citing Moresi v. State Through Dep't of Wildlife and Fisheries, 567 So.2d 1081, 1095-96 (La. 1990) to affirm an award of $5,000 in general damages to a wife's boyfriend despite a lack of physical contact where the husband assaulted the boyfriend by attempting to punch him, holding him at knifepoint, and threatening to kill him).

See La. C.C.P. art. 683A & B (providing that an unemancipated minor has no procedural capacity to sue and that persons having parental authority over an unemancipated minor must join as proper plaintiffs to sue to enforce a right of the minor); see also La. C.C. art. 221 (stating that the father and mother who are married to each other have parental authority over their minor child during the marriage).

We set forth the name of this plaintiff and her child as stated in the child's medical records.